Dear Representative, Corn
¶ 0 This office has received your letter asking for an official Attorney General Opinion in which you ask, in effect, the following question:
May a police officer, employed by an Oklahoma municipality,work as a police officer for a municipality in another state?
¶ 1 Your inquiry involves an individual who simultaneously serves as a police officer for an Oklahoma municipality and in another state. If the police officer is determined to hold an "office" in both states, the Oklahoma police officer would be prohibited from serving as a police officer in another state.
 Constitutional Prohibition Against Holding An Office Of Trust In Oklahoma And Holding An Office Of Trust Federally Or In Another State
¶ 2 The Oklahoma Constitution contains a general prohibition against an individual who holds an office of trust in Oklahoma from holding another office of trust federally or in another state. Article II, Section 12 of the Oklahoma Constitution provides as follows:
 No member of Congress from this State, or person holding any office of trust or profit under the laws of any other State, or of the United States, shall hold any office of trust or profit under the laws of this State.
Id.
¶ 3 The Oklahoma Supreme Court addressed the constitutional prohibition in Wimberly v. Deacon, 144 P.2d 447 (Okla. 1943).Wimberly involved an Army reserve officer called into active military duty during World War II. The Oklahoma Supreme Court determined that the Oklahoma Constitution, Article II, Section12, prohibited the Army officer from simultaneously serving as an university regent while on active duty. See id. at 453-54. The Court articulated the purpose behind the constitutional dual office holding prohibition:
 No doubt the purpose of such provision is to protect the public interest so that an officer holding an office of profit or trust under the state laws may give his undivided attention to the duties of his office without being hampered by an official allegiance to any other state or the United States.
Id. at 452.
 Oklahoma Law Has Determined That Municipal Police Officers Do Hold An Office For Purposes Of Dual Office Holding Prohibitions
¶ 4 On several occasions, the Attorney General has concluded that a municipal police officer is considered to hold an "office" pursuant to another dual office holding prohibition set forth at51 O.S. Supp. 1999, § 6[51-6].[1] For example, Attorney General Opinion 95-48 relied upon Oklahoma City v. Century IndemnityCompany to conclude that dual office holding prohibitions applied to a municipal police officer simultaneously seeking to serve as a probation or parole officer. See A.G. Opin. 95-48 at 130; see also Oklahoma City v. Century Indem. Co.,62 P.2d 94, 97 (Okla. 1936).
¶ 5 Century involved a municipality seeking to recover losses sustained as a result of embezzlement by a deputy city clerk.See Century, 62 P.2d at 95-96. The surety company denied the municipality's claim on contractual grounds, arguing that the municipality failed to discover the loss within fifteen months after the bond's termination. See id. at 96. (The parties' contract provided for losses discovered during the bond's term or within fifteen months of the bond's termination.)
¶ 6 The municipality asserted that since the deputy city clerk was a "public officer," the surety bond was a statutory bond, rather than a common law bond, thereby negating the fifteen month provision. See id. at 96-97. The surety company countered that the deputy city clerk was not a "public officer," and therefore, as a common law bond, rather than a statutory bond, the municipality's failure to timely discover the loss extinguished its coverage under the bond. See id.
¶ 7 The Oklahoma Supreme Court articulated a three-prong test to determine whether the deputy city clerk qualified as a "public officer." See id. at 97. First, the position must be created or authorized by law; second, the law must impose definite duties; and third, the duties must entail the exercise of sovereign power. See id. Applying this three-prong test, the Court opined that the deputy city clerk held a "public office" because a statutorily created municipality delegated to the deputy city clerk specific duties in the exercise of its sovereign powers.See id. at 98.
¶ 8 Similarly, the Attorney General applied the three-prong test to an individual seeking to serve as both a police officer and a probation and parole officer:
 Applying the Oklahoma City v. Century Indemnity Co. test to a municipal police officer position, we find that the position is also an office within the meaning of Section 6 of Title 51. Municipalities are created by statute, and they, in turn, create police officer positions in accordance with their charters and invest police officers with a portion of the sovereign's power to arrest, search and seize.
. . . .
 Because both [police officer and probation and parole officer] positions are considered offices, it would be a violation of the provisions of 51 O.S. Supp. 1994, § 6[51-6] for a person to serve in both positions simultaneously.
A.G. Opin. 95-48, at 130-31.
¶ 9 Attorney General Opinion 77-180 provides another example in which municipal police officers have been construed to hold a "public office" for purposes of the dual office holding prohibition at 51 O.S. Supp. 1999, § 6[51-6]. This Opinion addressed whether a municipal police officer could simultaneously serve as a deputy sheriff.[2] Attorney General Opinion 77-180, relying upon the Oklahoma Supreme Court's holdings in State v.Sowards, 82 P.2d 324 (Okla. 1938), and Oklahoma City v.Century Indemnity Company, 62 P.2d 94 (Okla. 1936), concluded that:
 [T]he duties and powers of a police officer emanate from the sovereign, the State of Oklahoma. 21 O.S. 1971, § 99[21-99]. The municipal corporation or entity may create the position and appoint the officer but he is charged with the enforcement of all state and municipal laws within his jurisdiction based on his grant of authority from the State of Oklahoma through the auspices of the municipal corporation.
 It is apparent therefore, that a municipal police officer is a "public officer" within the meaning of 51 O.S. 1971, § 6[51-6], as he is vested with authority which involves the exercise of a function of sovereign power of the State of Oklahoma. His duties are in their nature public and the public is concerned in the performance of them. In his position, the municipal police officer does exercise the powers for the benefit of the public.
A.G. Opin. 77-180, at 123.
¶ 10 While Oklahoma has consistently held that municipal police officers hold an "office" for purposes of dual office holding prohibitions, one federal case disputes such a conclusion.
 Tenth Circuit Has Held That Municipal Police Officers Do Not Hold An Office For Purposes Of Dual Office Holding Prohibitions
¶ 11 The Tenth Circuit Court of Appeals has opined that municipal officers do not hold an "office" for purposes of Article II, Section 12, of the Oklahoma Constitution. See UnitedStates v. Ware, 897 F.2d 1538, 1541 (10th Cir. 1990).[3]
In Ware, several criminal defendants sought to invalidate a wiretap conducted by the Oklahoma City Police Department, asserting the police officers vacated their municipal offices when executing the federal wiretap. See id. at 1540. Denying the defendants' constitutional argument, the Tenth Circuit opined:
 We conclude that the provisions of Article II, Section 12 of the Oklahoma Constitution, as interpreted by several Oklahoma courts, does not apply to police officers who carry out duties delegated to them by an official holding an office of trust or profit under the laws of the State of Oklahoma.
Id. at 1541.
¶ 12 Interestingly, the Tenth Circuit's conclusion went further than either the federal district court or the government itself, both of which seemed to concede that police officers held an "office" for purposes of the Oklahoma Constitution, Article II, Section 12:
 The district court denied the defendants' objection to the admission of this evidence based on the illegality of the wiretap. The judge agreed that the officers in question were public officers under the Oklahoma Constitution, but found that the state statute relating to the interchange of employees between state and federal agencies, expressly authorized the dual appointment of state law enforcement officers to federal agencies and placed certain salary and benefit limitations on such employees to prevent the kinds of conflicts of interest targeted by the constitutional provision. . . . The government adopt[ed] this argument, and further contend[ed] that, even if the officers forfeited their state offices by accepting a federal appointment, their actions . . . [were] still valid as to third parties.
Ware, 897 F.2d at 1540 (citation omitted).
 Analysis
¶ 13 Federal court interpretations on state law questions are persuasive authority rather than mandatory authority. SeePhillips v. Williams, 608 P.2d 1131, 1135 (Okla. 1980);Dennis v. State, 990 P.2d 277, 287-88 (Okla.Crim.App. 1999). While Ware is persuasive, it does not overturn the longstanding conclusions reached using the three-prong test articulated by the Oklahoma Supreme Court in the Century case.
¶ 14 Under the Century three-prong test, municipal police officers have consistently been deemed to hold an "office" pursuant to Oklahoma's statutory dual office holding prohibition. This conclusion is consistent with Wimberly wherein the Oklahoma Supreme Court held that individuals holding an office of trust must give their "undivided attention" to the office "without being hampered by an official allegiance to any other state." Wimberly, 144 P.2d at 452. Oklahoma police officers who work as police officers in another state cannot commit their undivided attention to enforcing Oklahoma's criminal statutes.
¶ 15 Since an Oklahoma police officer holds an "office" for purposes of the constitutional prohibition, we must next determine whether the police officer holds an "office" in the other state. An Oklahoma police officer is prohibited from serving as a police officer in another state if the other position would similarly be considered an "office" using theCentury three-prong test.
¶ 16 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Article II, Section 12 of the Oklahoma Constitutionprohibits an individual from holding an office of trust inOklahoma while simultaneously holding an office of trustfederally or in another state.
 2. Consistent with the three-prong test articulated by theOklahoma Supreme Court in Oklahoma City v. Century IndemnityCompany, 62 P.2d 94, 97 (Okla. 1936), a municipal policeofficer holds an "office" because the position is created bystatute, there are definite duties imposed by statute, and theduties entail the exercise of sovereign power.
 3. Therefore, Oklahoma Constitution, Article II, Section 12,prohibits an Oklahoma police officer from simultaneously servingas a police officer in another state provided that the positionwould similarly be considered an "office" using the Centurythree-prong test.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
JOHN A. MAISCH ASSISTANT ATTORNEY GENERAL
[1] While providing for a number of exceptions, the Legislature restricts individuals from holding more than one office within the State:
 "Except as may be otherwise provided, no person holding an office under the laws of the state and no deputy of any officer so holding any office shall, during the person's term of office, hold any other office or be the deputy of any officer holding any office, under the laws of the state."
51 O.S. Supp. 1999, § 6[51-6](A).
[2] In 1986, the Legislature amended Section 6 of Title 51 to permit municipal law enforcement officers to serve as county law enforcement officers upon mutual approval by their governing municipal and county bodies. See 51 O.S. Supp. 1999, §6[51-6](A)(4).
[3] The Tenth Circuit relied upon cases involving individuals other than Oklahoma police officers. See Battiest v. State755 P.2d 688, 689 (Okla. Crim App. 1988) (involving a former assistant district attorney's ability to prosecute a criminal case after becoming an assistant federal prosecutor); Grand Juryof McCurtain County v. Cecil, 679 P.2d 1308, 1309
(Okla.Ct.App. 1983) (concerning whether an assistant district attorney was subject to the same removal provisions as the district attorney).